Good morning, Your Honors. May it please the Court, Dan Alberstone of Barron & Budd on behalf of the plaintiffs and appellants. And I'd like to approach this a little differently because I want to go directly to the issue of common purpose here, if I may. I think it's important to understand, first of all, I'd like to focus on two areas. One is the Court's dismissal of the RICO claim, and second, with respect to the Court's denial of our motion for catalyst fees. This is not a made-up case, and I've heard, listened carefully to the arguments that were made in the Court's comments before. But this case is not a made-up case. It's not a case in search of a theory. Well, nobody's suggesting up here it's a made-up case. We just ask questions to make sure that you're meeting the RICO, the things that are necessary for RICO. Right. And I want to focus on that, exactly. As the Court pointed out, in the common purpose section of the enterprise, we pointed out that the common purpose was to repeatedly, repeatedly order, assess, and charge borrowers for property inspections. And there's sufficient allegations within that complaint, that First Amendment complaint, that plausibly allege that. And I'll explain what they are. First of all, we allege that, we allege that Safeguard collaborated with Citi with respect to the development of these policies and procedures with respect to property inspections. We plausibly allege that. We also know from the complaint that Is that greater than the contractual relationship between the two? Oh, yes. This is, let's talk about that issue, because I mean, that's what I'd like you to do. No, I appreciate that. This exceeded just normal business conduct between the parties. As we've pointed out in our First Amendment complaint, in 2004, Fannie Mae, one of the major investors in these loans that services like Citi serviced, they warned loan servicers, do not charge delinquent borrowers for multiple property inspections unless the circumstances warranted it. So in your reply brief, you back away from the idea that the inspectors knew about the charging of the delinquent borrowers, right? What we're focused on is, and maybe again in RFLE, is the idea that there's a distinction between the enterprise and the predicate acts. And we never intended, nor do we believe we alleged, that the predicate acts were engaged in by the non-defendant They never engaged in the assessment of it and didn't have the fraudulent intent. And we know from Feldman, even though the common purpose was, in the indictment, was alleged to have been a fraudulent common purpose, i.e., to defraud insurance companies, that in that case, one of the members of the enterprise, Albert Feldman, did not have a fraudulent purpose. And so we never intended to allege as to the common And I could point you to a number of them, make absolutely clear that the city defendants used the property inspectors as instrumentalities to carry out their fraud. And so did the property inspectors know they were carrying out unnecessary inspections? Absolutely. One, because they developed the policies. And, number two, the STITs the policies with respect to collaboratively with city in terms of when to inspect these properties and to pass on charges. And what about that showed that they were unnecessary? It showed unnecessary. I'll give you an example of STITs. STITs, one of the class representatives. And in the record, we have evidence of the fact that with respect to the STITs, they lived in a gated community, in a condominium high-rise. But you were saying something about the policies they developed showed that they were going to be unnecessary. What about the policies? The policies of inspecting them and charging for each one and not taking into account whether or not they warranted the borrowers or these charges should be passed on. But you just said that they didn't. I thought you were saying both entities had this policy, but a minute ago you said that the inspectors didn't say anything about charges. So now you're bringing them back around to having a policy about charges? Yeah. If I'm confusing you, I really apologize. What I'm saying is that they didn't have they didn't engage in the predicate acts of fraud of assessing it. They obviously knew that some they were passing along charges that were inappropriate when they didn't when they didn't complete the inspections or whether they were unnecessary inspections. And they knew they were unnecessary because they were aware of the Fannie Mae requirements, the Fannie Mae requirements of not charging for multiple property inspections unless the circumstance is warranted. And that is critical. I mean, you've got to understand this. In 1994, according to the inspectors know that the circumstances were not warranted? Because when because in the Stitt case, for example, and that's the one I was giving you, the contract provided between Safeguard and Citi don't pass along, for example, if you get to a gated community and you can't have access, and this is one of the property inspections. And we know from the record that that's exactly what they did. They passed off the charges and that Citi paid the charge and assessed the Stitts for multiple property inspections when the inspection was never conducted. And we know from the record that Citi did not want to change its policies. And why? Because they would have to. What the district court asked and suggested in its order is who profited from this? I mean, Citi didn't profit from it, only the property inspectors. And that's just not true. The truth is that Citi enormously profited from it because they didn't have to absorb the cost of those inspections when they passed them along to the borrowers. And we know that. And we know internally, for example — But you're saying they shouldn't have done the inspections at all. So, I mean, if they hadn't done them at all, then no one would have profited. And if they did them but they charged the cost, then they're not profiting. I'm a little confused about what you think they should have done. What I'm saying is charging the borrowers is the fraud. Somebody wants to go by, for whatever reason, whether it's necessary or unnecessary, and do an inspection. Nobody cares. Nobody's harmed. If Citi wants to absorb the cost of each and every inspection, whether it's done every day, every week, or every month, who cares? But where the fraud comes in is when you're assessing borrowers for property inspections, that your investor, the holder of the note, tells you, don't charge the borrowers. And the record supports the fact that Fannie Mae, that HUD, that the National Mortgage Settlement all said, don't do what you're doing. Stop it. And they never stopped it until after they understood, Citi, that our case was proceeding after April 2013. And so what I'm getting — my point is this. The common purpose was to order, assess, and to charge for unnecessary property inspections. Who engaged — It wasn't to charge. Pardon me? It wasn't to charge. Or I thought you were saying it wasn't. I didn't say that they engaged in the predicate acts of charging. That the property inspectors obviously weren't the ones that assessed the borrower's account. The mere fact that they engaged in an enterprise with a common purpose of doing it, that's not unlawful. What's unlawful, engaging in predicate acts in furtherance of that enterprise. That racketeering activity. Same thing with Albert Feldman in the Feldman case. He was a member of the enterprise, but he didn't have the fraudulent intent. He didn't engage in the predicate acts, the pattern of racketeering. The other — Robert Feldman did. Well, then it seems to me that what you're saying is the predicate act is the, if you will, the fact that somebody's trying to collect the bill? Someone's assessing a borrower's account. That is the predicate act. If someone owes fees pursuant to a contract, then how is that a predicate act? Because they didn't owe it. You've got to understand that — Well, you have the right to dispute the fee. I mean, anybody has the right to dispute the fee, but just to merely charge the fee or ask the person to pay the fee, that doesn't make it a predicate act. Okay. Here we go. Good point. It was a promise without an intention to perform. And we've alleged that in the complaint. At the time Citi took over, took the servicing rights and serviced the loans, they understood at that moment in time, and it's in the complaint, that they couldn't comply with the investor requirements, that they couldn't comply based on their systems. They couldn't do that. But what do the investor requirements have to do with the contractual obligation to the borrower? There's nothing enforceable. I don't think you're arguing that there's a claim based on the investors. But that's a fraud. If your principal tells you as the agent, don't charge borrowers unless the circumstances warrant it, and you do that anyways, and you don't tell the borrowers that your principal, who actually holds the note, told you not to charge you, that's fraud. My worry is that — and that's why I've tried to get you there. It seems to me, if I just give you that there's an enterprise, I've still got to have a pattern of racketeering activity. And I was trying to come up with the predicate acts. The predicate acts, as I understand, is that they send out a billing statement, which says that these fees are delinquent and they have to be paid. But the bottom line, that's a contractual arrangement. You can fight that in court. You don't have — that's just trying to collect a bill they already had. How can that be the predicate act? Because at the time you enter into the contract, or in this situation, at the time you take over the servicing rights, you made a promise in accordance with that agreement that you're talking about without an intention to perform it. They could never, ever — So the violation is as to the investor? That sounds like you're saying that the promise — they entered a contract with the investor that they never promised to do. No. What's the promise to the borrower? When you take over — in the loan documents, that we're going to be charged for reasonable and appropriate property inspections. That's what it says. And how does the investor have anything to do with that? Because the investor told the agent, don't charge the borrower for multiple property inspections. If the principal who owns the note, the owner of the note, tells the guy who's charging you, don't charge the borrower, and you don't tell the borrower that, and you don't tell the borrower that you can't comply with the holder's instructions, then you've committed fraud. Here's another example. You're a minute over. Thank you. I've heard your argument. Let's hear the next. Thank you, Your Honor. May it please the Court. Steve Cain for Citi. So unlike the Chase case, plaintiffs have just three claims against Citi — RICO, fraud, unjust enrichment. We've talked a fair amount about RICO, so I'll try to be brief on that. But the district court dismissed the RICO claims because the complaint didn't plead facts supporting the complaints theory that Citi and Safeguard shared a fraudulent common purpose. I'm hearing plaintiffs seem to be backing away, at least in part, from that allegation. But the reality is they pled that. The complaint alleged that Citi and Safeguard formed an enterprise, and I quote, to defraud borrowers, close quote. And that was no accident. They made the exact same allegation in the prior complaint. District court dismissed the prior complaint for failing to plead a common purpose, and then they repeated the same allegation all over again in the amended complaint. Now plaintiffs are saying, well, we should have been given leave to file an amended complaint and say that Safeguard was unwitting. There are procedural and substantive problems with that. Procedural, Rule 16, amended pleadings deadline had already passed. I didn't even hear plaintiffs try to argue about good cause. Rule 15 requires a gross abuse of discretion. It's got to be illogical or implausible to reverse. In the other case, and I can't pull up the dates as quickly as I'd like to, in the other case the allegation was that the judge sat on the motion to dismiss so long that you wouldn't have been able to comply with the scheduling order. That's not the way I remember the facts in this case. Is that accurate? No. Your Honor, I believe that plaintiffs filed their amended complaint in May 2014. I'm talking about a subsequent amendment. Oh, a subsequent amendment would have happened. That would have happened in January of 2015 when the judge dismissed the RICO claims with prejudice. But that's because there were multiple amendments.  They filed three complaints. They had one complaint in the original bias case that was consolidated with Chase and other cases. Then they filed a complaint in our case. Then the amended complaint after a year of discovery. And so there's no abuse of discretion in refusing to allow them to file a fourth complaint asserting a new theory. And the new theory is futile anyway for reasons I think we've already covered. But it seems like the common purpose now is just to conduct inspections. And it's divorced from the supposed fraud, which is to charge for the inspections. So under that theory, it's city alone, not the enterprise, that's committing the fraud. So there's no they've got distinctiveness problems in addition to common purpose problems. And there are a lot of courts that say, you know, a services contract by itself just isn't enough to form a RICO enterprise. Otherwise, plaintiffs could easily convert just about any fraud claim into a RICO claim because, of course, these sorts of vendor contracts are commonplace. Now, plaintiffs also fail to plead or produce evidence of racketeering or fraud. And here the claims overlap because RICO fraud and unjust enrichment claims are all based on the same two fraud theories. One is that city's monthly mortgage statements concealed property inspection fees. There was no concealment. Before ordering inspections, city sent letters telling plaintiffs that if you don't carry your default, we're going to inspect your property and we're going to charge you for the inspection under the category delinquency expenses on your monthly statement. Then city sends monthly statements that charge plaintiffs for the inspections under the category delinquency expenses. And the statements themselves define delinquency expenses to include inspection fees. So I don't think the concealment theory works at all. Plaintiffs also argue their second theory is that city's monthly statements implicitly misrepresented that the fees were authorized by the mortgage. That's just a representation of law, though, as the district judge said. And plaintiffs need a misrepresentation of fact. Now, plaintiffs say that the monthly statements incorporated a factual representation that the inspections took place. They made a different argument in the district court. They said, and I quote, and it's a footnote, two-sentence response, plaintiff's fraud claims are based on misrepresentations of fact, i.e., that the challenged property inspections were authorized under the Fannie Mae Freddie Mac Uniform Mortgage Contracts, close quote. Well, that's just the representation of law. That's not the argument they're making now about factual representations. And they can't change theories on appeal. Regardless, Zerlot inspections clearly took place. Our supplemental excerpts include the Zerlot inspection reports, so the court's free to, it doesn't have to take my word for it. You can look at those reports. Now, plaintiffs say the STIT inspections didn't take place because the vendor or safeguard was unable to access the floor on which the STITs live in their apartment building. Now, I don't think that's right for reasons I'll talk about. But even if plaintiffs are right, there is no evidence whatsoever that the STITs were deceived by any representation that the inspections took place. To the contrary, Mr. STIT actually testified to his belief that the inspections couldn't have been taking place because, of course, he's well aware that they live in a high-rise building. So and plaintiff's reply just ignores this point, which I think is dispositive of the STIT issue. But I thought the claim was that they were charged for an inspection that didn't occur, not just that it didn't occur. That's right, Your Honor. But they're trying to get around the misrepresentation, the doctrine that says you can't base a fraud claim on a representation of law by saying that there was embedded in there a factual representation that the inspections took place. And they can't get there because there's no deception there. They were totally aware of the facts. And there was no reliance. No reliance, exactly. That's right. But was there a charge for an inspection that did not occur? A charge that if you're charged for an inspection, you have reason to believe that an inspection occurred. And if you're charged for it, that's a misrepresentation of fact. Well, we did charge them for it, Your Honor, but the plaintiffs knew the facts. Right? And so if they wanted to dispute it, they could have. They knew that we had charged them for inspections, and they had the belief that the inspections couldn't have taken place. So they had everything they needed if they wanted to complain. And by the way, the right complaint is a breach of contract claim. It's not to assert a fraud claim. And by, you know, I'd also say, look, I grant that inspections didn't provide as much information as there's a lot of inspections. But safeguard visited the property. It took pictures of the building. You can see the building is still fine. And it submitted reports, charged city. So, you know, the inspections did take place, whatever you may think of how much information you get from them. Now, we have an alternative argument that I just sort of alluded to, I think, which is that plaintiffs are limited to a breach of contract claim here, and that's what they are alleging. Plaintiffs have repeatedly said that their theory is that City Mortgage breached the mortgage by charging for these inspection fees. But you can't have a fraud-based claim that's based just on a breach of contract. Now, plaintiffs have several responses. They cite the Vega case. That case affirmed dismissal of similar fraud-based claims challenging inspection fees. Now, it allowed for the possibility that you might be able to state a fraud claim in this inspection arena by distinguishing a Bias v. Wells Fargo decision that actually our judge wrote. Bias was a pleadings decision. It alleged that Wells Fargo concealed fees, that it concealed that it marked up fees, and then it dissuaded plaintiffs from charging them. Vega is a MemDISPO anyway, right? Yes, that's correct, exactly. But there's nothing like that here. We disclosed the fees. We didn't mark up the fees. There's just no comparison. I heard Mr. Alberstone talk today about another attempt to shift this from contract to fraud law, the exception where the promisor doesn't intend to honor the contract at the time the contract is honored. Two problems with that argument. One, it wasn't made below, it wasn't made in their opening brief. I think it was the first time that I remember it was the reply, so it waived. Two, the argument assumes that Citi knew when it began servicing the loan that these plaintiffs would default and then that Citi would charge them for unnecessary inspections. There's no evidence at all in the record to show that's true. Plaintiffs have referred to HUD rules and Fannie Mae rules and so forth. We talk about those in our brief. I disagree with plaintiffs' characterizations, but it's irrelevant. It has nothing to do with the legal issues that we're talking about, whether there's a representation of law, whether this is really a contract claim, whether we disclose the fees, and so on. Plaintiffs also want attorney fees based on the notion that their lawsuit was successful and caused Citi to change its practices. Again, nothing illogical or implausible about what the district judge did here. In fact, it was completely correct. A couple points on it. Well, it doesn't need to be correct. Well, you're right. I'm saying that in addition to not being implausible and illogical, in fact, it is correct. I mean, I'm not sure it's correct, but it doesn't need to be. You're exactly right, Your Honor. But there were grounds for it. We submitted contemporaneous internal Citi emails showing that we were reacting to the national mortgage settlement, a massive settlement from the federal government overseen by a monitor and a judge that required us to change our inspection practices. There's nothing to suggest this case had anything to do with it. Thank you. Thank you very much. Your argument is finished. Can I have just 60 seconds? Sure. I mean, you seem pretty excited that I stopped you after your argument was over, but I'll be nice to you. You can have another minute. I appreciate that, Your Honor. Thank you very much. I want to hit two issues, actually three quick issues. One is the letters that counsel mentioned to you about these pre-inspection letters that put borrowers on notice. You need to read them. They're in the record. Those pre-inspection letters constituted the second fraudulent representation. That fraud is in the letters. They say that those inspections are being done in accordance with the mortgage agreements and as requested by the investors' requirements. Neither was true. That's number one. Number two, in terms of the cattle's fee motion, I just want to take you through the timing because I believe the district court abused its discretion with respect to denying them. First off, the district court relied heavily on the testimony of Kim Krakowiak, Citi's representative. But in deposition, Ms. Krakowiak refused to answer the question, why did you change your policies? It was objected to based on attorney-client privilege. She refused to answer the question, but then said it wasn't this lawsuit. And we argued to the district court that they had waived their right to argue against our motion. Once they took the asserted privilege and refused to tell us why, they didn't have the ability to argue, number one. Number two is, none of the evidence that they put forward that counsel just mentioned to you substantiates at all that it was driven by the National Mortgage Settlement. As I said, in 1994, HUD had regulations that told them don't charge borrowers. They didn't do anything. In 2004, Fannie Mae told them don't charge borrowers for these inspections. They didn't do anything. The National Mortgage Settlement came out in April 2012, and they didn't do anything. It wasn't until after the order came out that allowed this case to proceed where the court, where they made the changes. And if you look at the record and the documents, that's the evidence that supports it. Thank you, Your Honor. Thank you. This case will be submitted, and court will be adjourned.
judges: N.R. Smith, Friedland, Lynn